# 𝔐𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### RORRER AND AL. V. GUGGENHEIMER AND AL.

March 19th, 1891.

Absent, Lacy, J., and Hinton, J.

FRAUDULENT CONVEYANCE—*Receiver — Case at bar.*—Creditor of retail store-keepers bought their stock of goods, got credit for his debt, and assumed certain of their debts. Wholesale merchants, with only personal demands against them, got injunction and had receiver appointed to take charge of and sell the goods. There being no evidence of fraudulent intent: *held*, the injunction and receiver were improper.

Argued at Wytheville. Decided at Richmond.

Appeal from decree of circuit court of Carroll county, rendered October 23d, 1890, in a suit wherein Max Guggenheimer and others were complainants, and George F. Rorrer, Charles F. Rorrer and John W. Childress were defendants. The decree being adverse to the defendants, they appealed. Opinion states the case.

*A. M. Lybrook, A. P. Staples,* and *S. A. Anderson,* for the appellants.

*P. Bouldin, Jr., J. L. Tompkins,* and *D. S. Pierce,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The bill charges that on the 11th day of March, 1889, said George F. and Charles F. Rorrer, merchants and partners, under the name of Rorrer Brothers, were indebted to the complainants for goods sold and delivered to them on credit; and that, for the purpose of hindering, delaying and defrauding their creditors, they made a pretended sale of the whole of their partnership effects to one John W. Childress; who, the bill alleges, was an insolvent and a mere tool or figure-head through whom the fraud was consummated. The prayer of the bill was to have the said sale set aside and adjudged to be fraudulent, and for the appointment of a receiver, and an injunction, to restrain the defendants from conducting their business as merchants—selling their goods, collecting their bills, and paying their debts.

The bill was filed 23d of April, 1889; and on that day, without an answer from the defendants to the bill charging them with the grossest intentional fraud and collusion of fraud; and without one word of testimony, or even the affidavits of the complainants, themselves, to support the bill, the court made an order, according to the allegations and prayer of the bill, appointing the sheriff of Carroll county its receiver, and directing him, as such, to seize the property of the defendants, and to sell that of it which was perishable; and to make a list of all choses in action belonging to the defendants, and to proceed to collect the same in the most expeditious manner possible; and requiring the defendants, George F. Rorrer and Charles F. Rorrer, and John W. Childress, to turn over, at once, all of their goods, horses, wagon and buggy, and choses in action, to the said receiver; and restraining the defendants, George F. Rorrer, Charles F. Rorrer, John W. Childress, and all other persons, from disposing of the said goods, wagon, buggy and horses, and choses in action, until the further order of the court.

The defendants promptly answered the bill, in May, 1889; and, admitting the indebtedness of Rorrer Brothers as stated

in the bill, they deny every other allegation made in the bill; and denying, unqualifiedly, all fraud, or intention of fraud, in the sale of their partnership business and effects to John W. Childress, made March 11th, 1889, they exhibit their agreement, of that date, with said John W. Childress, to show the terms and good faith of that sale.

The sheriff of Carroll county, as receiver, under the order of April 23d, 1889—the day the bill was filed—took possession, on the 29th of April, 1889, of the store-house and lot and stock of goods, and fixtures therein, and of the private property of said Rorrers—not partnership effects, and exempt by them as heads of families; together with the private property of said John W. Childress; all of which he has had in his exclusive possession up to the present time, denying to the said defendants, George F. Rorrer, Charles F. Rorrer, and John W. Childress, any control over any part thereof, except that the decree complained of directed the release of the two horses and wagon to the said Rorrers.

The court, by its decree of October 23d, 1889, overruled the motion of the defendants to dissolve the injunction granted to the complainants, and to have the property of the defendants restored to them; and, deciding that the sale made by the agreement of March 11th, 1889, by Rorrer Brothers to John W. Childress, was fraudulent, and made with intent to hinder, delay and defraud the creditors of the said Rorrer Brothers, directed the sale of all the stock of goods, and the colts claimed by the said John W. Childress as his private property, for the benefit of the complainants.

In their answer to the notice of the motion to the court for an order of sale of the property in the hands of the court, the defendants say, "Respondents deny the right of the plaintiffs to an order for the sale of the property in the hands of the court. They deny that any fraud or intention to hinder, delay, or defraud the creditors of Rorrer Brothers ever existed, or has been proved in this case; and they deny that this hon-

orable court has any jurisdiction to decree a sale of said property until fraud has been established and adjudicated. The contract of March 11th, 1889, was *bona fide* and legal; and under that contract this respondent, John W. Childress, became the owner of the said property, but under no lien, encumbrance, or property-interest of the plaintiffs; and under that contract the said Childress could, and would have operated the store, and sold said goods and collected said choses in action; and, through the respondents Rorrers, would have paid the plaintiffs' debts, but he would have done so free from the interference or coercion of the plaintiffs, and so long as the said contract is not set aside and annulled, this court has no jurisdiction to sell, without judgment or execution, the property of respondent, Childress, for the payment of plaintiff's debts. Respondent submits that the said contract of March 11th, 1889, is not fraudulent or illegal; and if sustained and executed, it would have resulted not in defrauding the plaintiffs, but in affording them an adequate, legal remedy for the payment of their debts, and respondents are now, and have long been, ready, if allowed to carry out said contract, to furnish to plaintiffs security that their debts will be paid according to the provisions of the same. Respondents intended a literal compliance with the said contract, and were, as fast as possible, complying with the same when they were arrested in their proceeding by the hand of the plaintiffs. Respondents, already greatly injured by the acts of the complainants, submit that a sale of the said property under the decree of the court, and through the medium of a receiver, would result in a great sacrifice of the same, and a great injury to the property rights of respondents."

The evidence in the record does not sustain the allegations of fraud—actual, intentional, and gross—made in the bill; and, certainly, there is no ground, in law or equity, to justify the very summary and severe proceeding of an injunction, receiver, and sale, the very day the bill was filed, and without answer from the defendants, upon the prayer and unsupported

allegations of parties, who had no title, no lien, and nothing
but the mere right of action for claims *in personam* and not *in
rem.* The weight of the evidence shows a character for in-
tegrity in the appellants, and proves that John W. Childress,
at, and before the sale of March 11th, 1889, was a creditor of
Rorrer Brothers in the sum of $851.97. He requested pay-
ment, and they tried to effect a sale to others whereby to raise
the money to meet the demand of Childress for payment; and
failing in this, the result was the sale to Childress of the store-
house, lot, and goods for the sum of $3,204, the amount due
by them to Childress to be credited on the sale money. It
shows that the sole purpose of Childress was to save his said
debt of $851.97, and the purpose of Rorrer Brothers to pay,
as far and as soon as they could, their debts. In the contract,
Childress assumed to pay creditors of Rorrer Brothers $1,400,
of which amount he actually did pay within the six weeks,
$317, and was only prevented from paying it all by the seizure
of his property and the stoppage of his business by the order
and injunction of the court of April 23d, 1889, which cut off
his means, business, and ability to pay according to his con-
tract. The face of the contract shows that Childress would
owe to Rorrer Brothers a net balance of $2,254, amenable and
available to their creditors, if time was given to Childress to
carry on and realize his business; and that instead of intend-
ing to hinder, delay, and defraud creditors, they were doing all
that was possible to save them; and there was no concealment,
or effort to conceal anything in the transaction evidenced by
the contract.

The appellants, Rorrer Brothers, were retail merchants in a
country store; the appellees were city merchants, who sold to
Rorrer Brothers in the usual course of business. The goods
ordered and sent were not stopped *in transitu;* were received
by Rorrer Brothers and became their absolute property—for
sale, by retail, or *in solido*, or for any disposition they chose to
make of them. The creditors had no lien, by attachment,

judgment and execution, or levy on them; they had no owner-
ship or property in the goods, nor any title to them. They
had sold them to Rorrer Brothers, for sale by them, and they
took the risk of payment; and they had nothing more than a
personal demand on Rorrer Brothers for the debt, with simple
right of action to recover judgment. Rorrer Brothers had a
right to sell, *in solido*, as fully as *by retail*, to any buyer whom
they choose to credit. Had they sold the goods, *in solido*, for
*cash*, and put it in their pockets, the creditors could not have
set the sale aside, nor have reached the proceeds, save by judg-
ment, execution, summons before a commissioner, or by sug-
gestion or levy upon tangible assets.

As for the real estate—the storehouse and lot—the creditors
had no lien on that; and Rorrer Brothers, as owners, subject
to the lien of deed of trust for purchase-money, could sell;
and, on payment of the lien of the deed of trust by Childress,
he could compel conveyance of the title. The question of his
claim, $851.97, on Rorrer Brothers, and of his solvency, was
one between them and him, only; exactly as it would have
been between them and any retail buyer whom they might
choose to credit. They say that they did owe him, Childress,
$851.97, which they credited upon his purchase; and the cred-
itors cannot question it any more than any set-off acknowl-
edged by Rorrer Brothers against a retail account of any cus-
tomer.

There is no proof that they did not owe this debt to Chil-
dress, and nothing to rebut their averment that they did. The
evidence shows that Childress was a trading, trafficking man,
whose business was not confined to any one place, or class of
trade; and that he was not without credit. But the plain
point is, that these creditors, having no lien of any kind on
the goods, and no property in or claim upon the goods them-
selves, had no right to the summary proceeding of an injunction
and receiver—either as to the realty, or the goods and chattels.
They sold at the risk of loss and non-payment; and they had

no more ownership in the goods than they had in the clothing or watches of the Rorrers; and they had no legal right or remedy against the *wholesale* to Childress, other and greater than they would have had against Rorrer Brothers had they not sold to Childress, but kept on retailing.

But there is no proof that the sale to Childress was not *bona fide;* he bought to save his debt; and he was actively and efficiently paying off a large indebtedness of Rorrer Brothers according to the contract, when he was arrested by the injunction and seizure of his stock of goods, and the stoppage and ruin of his business, at the instance and by the act of the complainants, who, in their eager and unjust impatience, killed the goose that was laying for them golden eggs.

True, Childress lived some twenty miles off; but he had a right to employ agents or clerks to carry the business on under his supervision when he came. He chose to employ the Rorrers, who knew most about the business.

If the principles of the decrees complained of be made a rule, what security or confidence can any retail dealer have for safety in his enterprise? What is the limit of amount of sale —or of credit of buyer—beyond which the retail merchant will become liable to injunction, receiver, sale, and ruin?

The precedent would be bad and disastrous. The decree appealed from is illegal and erroneous, and it must be reversed and annulled.

DECREE REVERSED.